## Stowers v. First Nat. Bank of Pikeville et al.

(Decided March 1, 1938.)

FRANK W. STOWERS for appellant.

O. T. HINTON for appellees.

Opinion of the Court by Creal, Commissioner— Affirming.

The First National Bank of Pikeville, Ky., instituted this action in equity against F. W. Stowers and a number of other defendants, seeking to recover on a number of notes executed by Stowers to it and on each of which some of the defendants were bound as endorsers and for the enforcement of a mortgage lien on mineral, oil, and gas rights in a tract of about 72 acres and the interests of Stowers in other real estate. Judgment was rendered granting to the plaintiff the relief sought, and the minerals in the 72-acre tract and the interests of Stowers in other real estate which were in lien to secure the payment of the indebtedness were sold by the master commissioner as directed by the judgment, and this appeal by Stowers is from orders of the court overruling his exceptions to and confirming the commissioner's report of sale. The appeal is against the First National Bank, K. J. Day, who was an endorser on some of the notes, individually and as trustee, and S. N. Cecil.

No brief has been filed on behalf of any of appellees, but, as we infer from the record, the endorsers on the notes have satisfied the bank's indebtedness, and it, of course, has no further interest in the litigation. The mineral rights in the 72-acre tract were purchased by K. J. Day for $250, and he, as trustee, has since transferred and assigned the benefits of the bid to himself individually. Before making the sale, the commissioner caused the mineral rights in the 72-acre tract to be appraised as provided by statute and the appraisers selected fixed the value thereof at $1,000.

In his original and first and second amended and supplemental exceptions to the report of sale, the main grounds relied on are in substance that the property was sold at a time when appellant was necessarily absent from Kentucky and engaged in important litigation in the state of Virginia and that he knew nothing about the advertisement of the sale, or the sale of the property until his return; that K. J. Day, as trustee for him-

self and other endorsers and creditors of appellant, had become under the bid the purchaser of the coal, oil, gas, and other mineral rights of a value of several thousand dollars for the nominal sum of $250. There are other exceptions of a trivial nature which are wholly wanting in merit.

No authorities are cited as supporting appellant's contention that the sale should be set aside on account of his absence. His exceptions do not disclose such a casualty or misfortune as would prevent him from attending the sale. He was not a party to the litigation in Virginia but was merely counsel for some of the litigants. He knew that the land could and would be sold under the judgment, and yet with such knowledge voluntarily absented himself from the state and, so far as the record discloses, without giving any notice to the master commissioner or parties in interest that he would be away or asking that the sale be deferred or without leaving anyone to represent him in the matter. In such circumstances, it is apparent that the court was not authorized to set aside the sale on that ground. See Aulenbrock et al. v. Blakemore, 262 Ky. 157, 89 S. W. (2d) 635.

Aside from the statement of appellant in his exceptions that the mineral rights in the 72-acre tract were worth several thousand dollars, there is little, if anything, in the record to support that contention except a commissioner's deed which shows that he purchased the gas, oil, and mineral rights of every description under the land in 1922 for $14,000. He did set out in his affidavit that there were valuable seams of coal under this tract of 'land; that there were important mining operations on lands nearby; and that there had been some gas development near this land, but the report of sale discloses that the sale was made by the commissioner in Pikeville while the circuit court was in session and, in the absence of any showing to the contrary, it is presumed, as is shown by the report of the commissioner, that the sale was duly advertised. It is therefore manifest that, if the mineral, gas, and oil rights in this land were generally considered valuable, more interest would have been manifested at the sale. As already indicated, the appraisers only fixed the value at $1,000, and there is no showing that they were not disinterested and unbiased, as the law requires they

should be. It may not be inappropriate to add that, as recited in the order overruling appellant's exceptions, he permitted his right of redemption to expire, and it is inconceivable that this would have happened if the mineral rights were as valuable as he would represent them to be. It is a general rule that a sale will not be set aside on the ground of inadequacy of price unless the inadequacy be so great as to shock the conscience or to create a presumption of fraud. Greer v. McAninch, 226 Ky. 644, 11 S. W. (2d) 696; Kentucky Joint Land Bank v. Fitzpatrick, 237 Ky. 624, 36 S. W. (2d) 25; Aulenbrock et al. v. Blakemore, supra.

Appellant's indefinite statements in his exceptions concerning the value of the property amount to little, if anything, more than conclusions, and there are no supporting affidavits nor evidence to sustain him. On the other hand, the circumstances to which we have referred clearly indicate that persons engaged in mining and oil and gas operations and the public did not regard the properties as valuable. It is not even claimed that any person or persons desire to or would pay more if the property were resold. The record fails to reveal such inadequacy of price as would under the rule above referred to authorize a court to set aside the sale on that ground.

Judgment affirmed.